## WILLIAM PRICE *et al.*

*v.*

## ANN KARNES.

1. DEED ABSOLUTE IN TERMS—*when a mortgage.* The doctrine is well settled, that a deed, absolute in terms, if intended to secure an indebtedness, is a mortgage, whether the intention is manifested by a written defeasance, by parol declarations, or by the acts of the parties.

2. SAME—*proof.* Where a deed is absolute on its face, the proof should be clear before a court would hold it a mortgage, and decree a foreclosure or a redemption.

3. A party sold another twelve lots of ground adjoining the city of Chicago, by a conditional agreement, and $3300 was paid, giving the purchaser the option, on seeing the property, if not satisfactory, to decline to hold it, and have the money returned; subsequently, and in July, 1857, and about one month afterward, the same grantor sold to the grantee twelve other lots in the same tract of land for $3900, $756 was paid, and notes given for the balance, $1900 was paid in August, and in the same month the twenty-four lots were conveyed to the purchaser by a warranty deed; this evidenced a purchase, and where the evidence is conflicting and unsatisfactory, it was proper for the court to refuse to decree the transaction a mortgage, and to refuse permission to redeem as from a mortgage.

APPEAL from the Superior Court of Cook county.

Mr. MILTON T. PETERS and Mr. EDWARD S. BRAGG, for the appellants.

Mr. H. A. WHITE and Mr. W. T. BURGESS, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

There can be no question in this case, and none is made, that the first contracts of June and July, 1857, between the parties, concerning the property in controversy, were conditional sales. It was so expressly agreed in the contracts written at the time. The purchaser could elect to take the property absolutely in fee, or she could disaffirm and have her money returned, with an agreed rate of interest.

But the real question at issue is, whether the deed of August, 1857, for the lots mentioned in the first contracts, and the deed of 1862, for an additional number of lots, both absolute in their terms, were intended to convey an indefeasible estate, or only intended by the parties as security for the money before that time advanced by the defendant to the complainants.

A conveyance of land, absolute in terms, if intended as security for a debt by the parties, is a mortgage, whether the intention is manifested by a written defeasance executed at the

278 PRICE *et al.* v. KARNES. [Sept. T.,

Opinion of the Court.

time of the conveyance, or by parol declarations, or by the acts of the parties. *Clark* v. *Henry*, 2 Cowen, 324; *Porter* v. *Nelson*, 4 N. H. 130; *Dwen* v. *Blake*, 44 Ill. 135.

This doctrine has become so well settled by numerous adjudged cases, that it is now unnecessary to multiply authorities. It has long since passed into a maxim, in the law, that "once a mortgage always a mortgage."

But, as a conditional sale, if really intended, is valid, the inquiry in every case must be, whether the contract in the specific case is a security for the repayment of money, or an actual sale. *Conway's Ex'r* v. *Alexander*, 7 Cranch, 218.

If we look into the deeds, we find nothing there to enlighten our inquiry. They purport to convey an absolute estate for a certain consideration stated. We find there no elements of a mortgage, no acknowledgment of a pre-existing debt, and no covenant for the payment of money. To overcome the express terms of the deed, generally, a debt must exist, and the liability to pay the same, that can be enforced in a court of law or equity. In this case, if the grantee chose to treat the deeds as mortgages, could she foreclose the same in a court of equity, and have a decree for a certain sum of money against the grantor, over his averment that this was a sale and not a mortgage? She would be held to make clear proof, to justify a decree against him.

The true intent not appearing in the instruments, we must look to the evidence *aliunde*. And here we are met, at the outset, with great difficulty. The real intention of the parties to this transaction, what they intended to, and did do, is obscured by a mass of conflicting evidence. We must say, that much of it is irreconcilable. A few facts stand admitted: In June, 1857, complainants, by a conditional contract, sold the defendant lots thirteen to twenty-four, both inclusive, in block one, in Anna Price's subdivision of the northwest quarter of the northwest quarter of section ten, in Cook county, south and adjoining the city of Chicago, for the consideration of $3300, which was all paid. It was understood and agreed,

that if the defendant, when she saw the property, or ascertained its value, did not like it, she was at liberty to decline the trade and have her money paid back, with interest.

In July, 1857, the complainants, under a like contract, sold to the defendant lots one to twelve, both inclusive, in block two of the same subdivision, for the sum of $3900. The defendant, at the time of making the last contract, paid to the complainants the sum of $756, and gave to them her note for $3124, payable one day after date, with ten per cent interest. On the 12th day of August, 1857, defendant paid to complainants $1000, and on the 19th day of the same month she paid the further sum of $975, leaving, of the principal of the note, $1159 due and unpaid. On the 28th day of August, 1857, the complainants executed and delivered to the defendant a warranty deed for the twenty-four lots described in the two contracts, for the consideration, as stated, of $7200.

In the history of the events that led to the making of the warranty deed, and the purposes for which it was made, and the subsequent transactions between the parties, the statement of facts by the parties in interest, in their testimony, is as widely different as is their interest in the subject matter of this litigation. Resort must therefore be had to the acts of the parties, rather than their words, and to such disinterested testimony as the record presents, for the true solution of the difficulty in the case. The acts of the parties have an unmistakable meaning.

In May, 1858, the parties visited Chicago, and the property is examined. Mrs. Karnes is evidently not very well satisfied with the property, and some complaint is made that its value and location had been misrepresented to her. At this time, the agreement of May 14th, 1858, was entered into and signed in duplicate by the parties, by which it was agreed, that if Mrs. Karnes so desired, within twelve months from that date, the complainants would take back the lots and return the money received for them, with twenty per cent interest. Why this agreement was made, and the reasons that led

·280        PRICE *et al. v.* KARNES.        [Sept. T.,

Opinion of the Court.

to its execution by the parties, is involved in some difficulty, and the evidence affords no satisfactory answer.

The theory of the complainants, on which they rest their claim for relief, as we understand it, is, that the deed of August 28, 1857, was not designed to be an absolute conveyance, but was taken for advances made by the defendant to the complainants, with the right on the part of the defendant to have the deed become an absolute conveyance, if, upon seeing the premises, she so elected; but she did not so elect upon seeing the premises, and declined to have the deed take effect as an absolute conveyance, and only would hold the same as security for the advances, and that the character of the instrument was not thereafter changed by the parties.

That the advances made, which was the consideration of the deed of August 28, 1857, were not extinguished by that deed, but that the indebtedness for such advances continued thereafter, and still exist, and the same was recognized by both parties up to the time of the commencement of this suit.

That, by the agreement of the parties, entered into May 14, 1858, Mrs. Karnes had the right to elect to have the complainants take back the premises conveyed by that deed, and have returned to her the money advanced therefor, with interest. That Mrs. Karnes did so elect, and the complainants assented to such election, and both parties, thereafter, as before, recognized the complainants to be the owners of the premises, and as owing Mrs. Karnes for such advances, which was the consideration of the deed, and that she held the deed alone as security for such indebtedness.

On the contrary, it is insisted, on the part of the defendant, that the true meaning and legal effect of the transaction between the parties is, that the contracts of June and July, 1857, were continued in full force until the making and delivering of the deed of August 28, 1857, when they were cancelled and discharged, and that the deed was then given without conditions or restrictions, and in fulfillment of said contracts, and that Mrs. Karnes had then elected to take the property, and

that the deed vested in her the legal title to the twenty-four lots.

That the contract of May 14, 1858, was drawn up and executed by the complainants, at their own instance and request, and not at the request of the defendant, and that she, in fact, did not know the contents of the paper when she signed it, and that the legal effect of the instrument is, that the complainants thereby agreed to repurchase the property if she should so elect, within twelve months, for a price to be found by calculation, and that she did not, within the time fixed, elect not to take the property, and the complainants never, at any time, agreed to take back the property and pay her for the same, according to the terms of the contract of May 14, 1858.

We think the facts that must be considered as established by the evidence in the record, are inconsistent with the theory advanced by the complainants.

When the parties were in Chicago, in May, 1858, Mrs. Karnes then learns, for the first time, that the property conveyed to her was incumbered by the Powers mortgage, upon which there was then a considerable amount due. The mortgage covered the entire forty acres, which was subdivided, and of which the lots conveyed to her constituted a part.

In consequence of the financial crisis of 1857–8, the property had depreciated very much in value. Mrs. Karnes became very much dissatisfied, and complained that she had been overreached in the contract by the representations of the complainants as to the value and location of the property. The balance of her note of $1159, to the complainants, remained unpaid, and it was agreed by the parties that no more should be paid until a settlement could be effected.

Instead of the property increasing in value, it continued to depreciate, and the incumbrance of the Powers mortgage still resting on the property, the parties holding the same threatening to sell under it; and Mrs. Karnes, failing to get a

satisfactory adjustment of the matter, placed it in the hands of her attorney.

After considerable negotiation between the parties, all came together at the house of Goodwin, in the city of Quincy. It was then agreed between the parties, by way of making a final settlement of the whole matter, and as the best proposition that the complainants could then make, that the complainants would convey to Mrs. Karnes, by quit claim deed, lots three to twelve, both inclusive, in block one, of the same subdivision, which lots, at the time, were not only subject to the Powers mortgage, but also to a mortgage given to one Seehorn. The deed was then executed, and bears date March 20, 1862. It was also agreed, as a part of the settlement, that Mrs. Karnes' note of $1159, held by the complainants, should be, and it was then, surrendered up to her; and also, that the agreement of May 14, 1858, should be cancelled, which was done, so the witness testifies, at whose house the transaction occurred. It was further agreed by complainant William Price, at that time, that the complainants would remove all incumbrances from the property, but he declined to place such agreement in the deed that conveyed the ten lots to Mrs. Karnes.

We must regard the evidence, that establishes these facts, as the better evidence in the case, for the reason that it comes from an apparently candid witness, and one totally disinterested.

The complainants still fail to remove the incumbrances from the property as they had agreed to do, for the alleged reason that they were unable to do so, being at the time financially embarrassed. The holders of the Powers mortgage still threatening to sell the property under it, the defendant became fearful that she would lose her entire property. A bitter and ill-natured correspondence then ensues between the parties. The complainants destroyed the letters of the defendant, and we are only permitted to know their contents as

the same are reproduced from the memory of the witnesses. Nothing,. however, seems to have resulted from this correspondence, and the letters are only important so far as they show the manner in which the parties treated these deeds, whether as absolute, or only as mortgages. On that question they would, and do, have an important bearing.

On the 30th day of September, 1867, Mrs. Karnes conveyed the ten lots last conveyed to her, to Eli Seehorn, in consideration of which he agreed to, and did, release her twenty-four lots from all incumbrance, so that she then held the property conveyed by the deed of August 28, 1857, free from all incumbrances. The controversy between the parties then ceased, until it is again revived by the steps taken to institute this proceeding, on the 17th day of October, 1868.

Throughout the entire history of this transaction, running through a period of nine or ten years, we are unable to discover any clear and distinct evidence that the parties ever treated the deed of August, 1858, as a mortgage for the security of indebtedness. But, on the contrary, the evidence tends to prove, and we may say does prove, that they treated it as an absolute deed. The burden of Mrs. Karnes' complaint, after the making of the deed of March 20, 1862, for the ten lots, was not that the complainants did not pay back her money, with interest, but that the incumbrances on the property were not removed, and that she was in danger of losing it entirely. This fact, itself, tends strongly to illustrate this case.

The letters of the complainant William Price, of 1865 and 1867, seem to us totally inconsistent with the claim the complainants now assert. The language used is wholly incompatible with the idea that he then considered the deed a mere mortgage for the security of his indebtedness to the defendant.

In his letter of August 7, 1865, addressed to the defendant, he says: "The transactions I had with you, were done with no intention of taking advantage, and had not the great financial crisis taken place, would have been for your profit." How for her profit, if she was simply to have her money back, with

284                 PRICE *et al. v.* KARNES.                [Sept. T.,

Opinion of the Court.

interest? According to his theory of the case, he was bound to pay her at all events. He evidently means to be understood, that her profit would be in the rise and increased value of her property, and not in her mere security for her debt.

Again, in his letter of September 23, 1867, addressed to the defendant, Mr. Price says: "When I saw you last, you told me one Mr. White advised you take $1000 for your lots; now you say they are worth $2000 or $3000. How fast they are rising. I would advise you to keep them until you can get the price Mr. White valued them, in 1859—$500 per lot, 50 by 177."

We have not before us the letters of the defendant, to which these are a reply; but we are at a loss to understand, if these deeds were mere mortgages, why Mr. Price is advising Mrs. Karnes not to sell *her* lots until she could get a certain price for them. If they were mere mortgages, the lots were not hers, and she would have no right to sell them; and if she did so, it would be a breach of faith. We can interpret these letters in no other light than as conceding, in terms that can not be well misunderstood, that Mrs. Karnes held this property by an absolute conveyance, subject to no defeasance whatever.

It would seem, that on the 20th day of March, 1862, when the quit claim deed for the ten additional lots was executed, in view of the transactions then taking place, that was the time, of all others, if the former deed was a mere mortgage, for him to assert it. A long period, five years, had then elapsed from the time of its execution and delivery. Yet, according to the testimony of the witness Goodwin, not one word was said by either party, at that time, as to the deed being a mortgage. It is difficult to reconcile the silence of Mr. Price, on that occasion, with the claim he now asserts.

We may safely say, that the complainants have not produced that clear proof that the law requires, to overcome the express terms of the deed, so as to be entitled to the relief sought.

Additional opinion of the Court.

In the case of *Dwen* v. *Blake*, 44 Ill. 132, this court held, and it is certainly a reasonable rule, that the parties having deliberately given the transaction all the forms of a sale, slight, indefinite or unsatisfactory evidence should not be permitted to change its character. It should only be by proof which clearly shows that the intention of the parties was, that it should be a mortgage and not a sale. To the same effect is the case of *Taintor* v. *Keyes et al.* 43 Ill. 332.

We are satisfied, from the evidence in the record, and must so hold, that the deeds conveyed an absolute and indefeasible estate to the grantee, Mrs. Karnes.

The bill was therefore properly dismissed, and the decree is affirmed.

*Decree affirmed.*

JUSTICES McALLISTER and THORNTON dissent.

After the original opinion was filed in this case, appellant filed a petition for a rehearing, which was granted. A rehearing was had, and the following additional opinion was filed:

Per CURIAM : A petition having been filed, a rehearing in this cause was allowed. We have again fully considered the case, and a majority of the court are still of opinion that the bill was properly dismissed, and the decree should be affirmed. We have, therefore, caused the original opinion to be refiled, as the opinion of the majority of the court.

*Decree affirmed.*