NATHAN G. SMITH<br><br>*v.*<br><br>DAVID K. CREMER *et al.*

1. EVIDENCE—*parol, to show a deed a mortgage, or security.* Although a form may purport to convey an indefeasible estate, it may, nevertheless, be shown to be a mortgage, or security only, by parol evidence.

2. MORTGAGE—*deed absolute in form—strict proof required.* A party, alleging that a deed absolute in form was intended as a mortgage only, is required to make strict proof of that fact. Having deliberately given the transaction the form of a bargain and sale, slight and indefinite evidence should not be permitted to change its character.

3. SAME—*once a mortgage, always a mortgage.* Where a deed absolute in deed is once shown to be a mortgage, it will retain that character until the equities of the mortgagor are foreclosed.

4. Where the purchaser of land assigns his contract to a third party, to secure a loan of money to make a payment, and the assignee, on completing the payments, takes from the original vendor an absolute deed of conveyance, this will stand in the same condition as the contract—a mere security for the money advanced by him.

5. SAME—*estoppel to deny an absolute conveyance.* Where a party's title was conveyed to another by an absolute deed, but, in fact, merely as a security for the payment of money loaned, and he, on his application to be discharged as a bankrupt, swore that he had no interest in the land, it was *held*, that the party so swearing was not thereby estopped from afterwards showing the true character of the transaction, there being no fraud in the same as originally made.

APPEAL from the Circuit Court of Kankakee county; the Hon. CHARLES H. WOOD, Judge, presiding.

This was a bill in chancery, filed by David K. Cremer, Joseph Cremer, William A. Chatfield, Elizabeth Cremer, Joanna Cremer, Sarah Cremer and Margaret Cremer, against Nathan G. Smith, to enjoin an ejectment suit, and to have a certain deed declared a mortgage, and for redemption therefrom.

David K. Cremer had a contract with Hiram Whittemore for the purchase of the land, and assigned the same to the defendant, Smith, under the promise of assistance in making the payments. It appears that Cremer made most of the payments, but that Smith completed the same, and thereupon took a warranty deed to himself, which was the deed sought to have declared a mortgage. The opinion of the court states the other necessary facts.

Mr. JAMES N. ORR, for the appellant.

Mr. THOS. P. BONFIELD, and Mr. C. A. LAKE, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This bill was to enjoin an ejectment suit, and to have the deed for the premises in controversy declared a mortgage, so that the parties claiming the equitable estate might be permitted to redeem.

The principal point made is, whether the deed, though absolute in form, was, in fact, intended by the parties as a

mortgage. The law is well settled that the character of a transaction may be shown by parol evidence, and, although the deed purports to convey an indefeasible estate, it may, nevertheless, be shown to be only a mortgage. The party alleging such fact is always required to make strict proof. Having deliberately given the transaction all the forms of a bargain and sale, slight, indefinite or unsatisfactory evidence should not be permitted to change its character. *Price et al.* v. *Karnes,* 59 Ill. 276. When it is once shown the deed is a mortgage, it is a familiar principle, it retains that character until the equities of the mortgagor have been in some way foreclosed.

It seems to be conceded the original transaction with Whittemore was a mortgage to secure certain indebtedness. This fact is not controverted.

The contract was subsequently assigned to appellant, and the real question in the case is, whether it was done in pursuance of a sale, or whether it was done as security for such sums of money as he should advance to appellees, to enable them to pay the amounts to become due to Whittemore. There was no written agreement, and the intention of the parties must be gathered from their acts, and contemporaneous circumstances. The theory of appellant is, that he purchased all the interest of appellees in the lands in dispute, and, having paid Whittemore the amount due him according to the contract, he became entitled to receive a warranty deed to the premises. Upon payment being made, Whittemore, in pursuance of the terms of the contract, did make and deliver to appellant a warranty deed, which appellant now insists conveyed the premises to him in fee simple, subject to no defeasance whatever. It is difficult to reconcile the testimony with this theory of the case. The evidence is somewhat conflicting, but the acts of the parties have an unmistakable meaning.

After the assignment of the contract, appellees continued in possession, and there never was any surrender of the

premises. The claim that appellees occupied the premises as tenants of appellant, we do not think is supported by the weight of the evidence.

It clearly appears a large portion of the payments that were made to Whittemore were made with money sent home by Jesse Cremer, while in the military service, and with money received by his father, for back pay and bounty, after his death. It does not seem possible these payments were made as for rent. They were made by appellees, directly to Whittemore. If intended as rent, it is inconceivable they were not made to appellant himself. Another fact, which is sustained by testimony outside of the parties in interest, tends strongly to elucidate this case. It is, that, at one time, when David was making a payment to Whittemore, he lacked a small sum of having the amount necessary, and borrowed $100 of appellant, in the presence of Whittemore. It is inexplicable, if appellant was paying the money on his own contract, that he did not pay it directly to Whittemore. Instead of that, it was handed to David, and by him paid over with the other money paid at the same time. It is a singular fact, in almost every instance where money was paid to Whittemore on the contract, David was present.

There is no doubt appellant made payments to Whittemore out of his own money, but it is obvious it was done with a view to assist appellees. Indeed, the acts of the parties, about which there can be no dispute, can be reconciled on no other hypothesis than that he was assisting appellees to pay for this land, and the contract was assigned to him by way of security for such sums as he should advance.

At the date of making the deed, there was a pre-existing indebtedness, and, in view of the evidence, it must be held appellant received it, as he had previously held the contract, as mere mortgage security.

Prior to any difficulty, both parties seem to have understood the matter in this way. In conversations with disinterested parties, they gave the same explanations of the relations

between them. The conclusion seems inevitable, therefore, that the transaction was never intended to be regarded as a bargain and sale, and, the assignment having been made for no other purpose than as security, the deed made in pursuance of that understanding is but a mere mortgage.

The proof shows appellees availed themselves of the provisions of the bankrupt act, and, in some proceedings had thereunder, they more than once stated, on oath, they had no interest whatever in these lands, and it is now insisted they are estopped to assert the contrary, on the ground they have attempted to defraud their creditors. So far as the evidence shows there was any corrupt conduct in the bankrupt proceedings, appellant is as deeply involved in the terpitude of that transaction as are appellees. Whatever wrong they may have committed, it distinctly appears it was advised by appellant. He was present at the first interview, and assisted in making the solicitor employed to conduct the proceedings in the federal court believe appellees had no interest in these lands. Prior to that time, he had never claimed the lands in fee, and there is some evidence tending to show he may have advised the parties to the course pursued, for sinister purposes. Whether this testimony can be credited or not, the most favorable view that can be taken for appellant is, that the parties stand *in pari delicto.*

But conceding all that is claimed by counsel, that appellees were guilty of perjury in procuring their discharge in bankruptcy, it is not perceived how it can affect the fairness of the original transaction. That was made for a lawful purpose, and with no intention to perpetrate a wrong upon any one. The subsequent improper conduct of appellees could not affect the good faith of the original transaction. It would be a singular doctrine, indeed, if appellant could make the misconduct of appellees in regard to these lands, which, by no possibility, could affect his interests, and about which he need not concern himself, a ground for the non-performance of his own contract.

The assignment of the Whittemore contract to appellant is tainted with no fraud whatever; was made with no view to defraud creditors, and no reason is shown why equity will not assist the parties in having it performed according to the original intention.

It is insisted, the amount found due appellant, which appellees are required to pay to redeem the lands, is not as large as it ought to be. There is very grave conflict in the evidence as to the amount paid Whittemore by appellant, for the benefit of appellees. They claim it is much less that the sum found by the court. It is difficult to arrive at a conclusion as to the exact amount due. We are of opinion, however, the court found quite as large a sum as the evidence would warrant. There does not seem to be any just cause of complaint on the part of appellant. Indeed, the court might have found a much less sum, and it would not appear to be against the weight of the evidence.

The costs are in the discretion of the court, in cases like this, and, in adjudging the costs against appellant in the court below, there was no abuse of a sound discretion. The facts fully authorized the action of the court.

Perceiving no error in the record, the decree is affirmed.

*Decree affirmed.*