## ISAAC N. HARDIN ET AL.
### v.
## HENRY F. EAMES ET AL.

1. DEED IN THE NATURE OF A MORTGAGE.—Where it appears that the complainant, having some equitable interest in lands sold, the time of redemption being about to expire, applied to the defendants to help him take care of the property until he could redeem therefrom, and the defendants advanced the money, with which they purchased the certificates of sale, taking the title to the land in their own names, the transaction will be considered in the nature of a loan, and the deeds taken by the defendants will be regarded in the nature of mortgages.

2. EXPIRATION OF TIME OF REDEMPTION—INTEREST OF OWNER.—Although the previous owner of property may have no interest after the expiration of the twelve months, capable of assertion by redemption, it does not follow that he has no beneficial interest of any kind. He is still interested in having the property further appropriated to the payment of his debts through

the instrumentality of a creditor's redemption, and in case of a surplus arising from a judicial sale thereof, is entitled to such surplus.

3. USURY.—The transaction being regarded as a loan of money to the complainants, it follows that it is liable to the taint of usury, and where it appears that during the transaction $2,000 was paid the defendants by complainant, and the evidence discloses no consideration therefor, it will be considered usurious.

4. RIGHTS AS TO CERTAIN SPECIFIED LOTS.—There was no dispute that as to certain lots, numbered 11, 12 and 13, the complainant furnished to defendants the money to purchase them, and the same were held in trust for him, or whom he might appoint. This being so, the court erred in holding these lots chargeable, in common with the other property, with payment of the entire indebtedness. They were only chargeable with such liens as actually existed upon them, and the court should have found the amount of such liens and permitted the complainants to redeem by paying the same.

5. SALE OF LANDS HELD IN TRUST—TRUSTEE CHARGEABLE WITH FULL VALUE.—When a deed is shown to be a mortgage, it remains a mortgage until the equities of the mortgagor have been foreclosed. In the absence of any express power of sale, the redemption of the mortgagor cannot be foreclosed without his consent, except by decree or judgment of a court of competent jurisdiction; and if the creditor holding such lands in pledge, sells them without foreclosure, or consent of the mortgagor, he will be chargeable with the full value of the lands, without regard to the amount for which they were sold.

6. RIGHTS OF SURETIES OF THE MORTGAGOR.—In addition to the security afforded defendants by the purchase of the lands in their own names, they received, to secure the money loaned to complainant H., the conveyance to them of certain lots held by the other complainants in their individual right. *Held*, that these complainants were merely sureties for H., their co-complainant, and were entitled to all the rights, legal and equitable, incident to that relation. And even if the sale of lots 11, 12 and 13 was had with the consent of H., it did not affect the rights of these sureties. Where a creditor procures further security by the pledge of other property, he thereby becomes a trustee as to that property for the sureties, for the payment of the debt, and they have the right to discharge the debt and compel the creditor to transfer the mortgage or pledge to them for indemnity.

APPEAL from the Superior Court of Cook county; the Hon. S. M. MOORE, Judge, presiding. Opinion filed February 4, 1880.

Messrs. DENT & BLACK, for appellants ; that the conveyance was in reality a mortgage, cited Reigard v. McNeill, 38 Ill. 400 ; Hanford v. Blessing, 60 Ill. 352 ; Price v. Karnes, 59, Ill. 276 ; Ewart v. Walling, 42 Ill. 453 ; Wynkoop v. Cow-

Hardin v. Eames.

ing, 21 Ill. 570 ; Klock v. Walter, 70 Ill. 416 ; Strong v. Shea, 83 Ill. 575 ; Dennis v. McCagg, 32 Ill. 429 ; Smith v. Cremer, 71 Ill. 185 ; Russell v. Southard, 12 How. 139 ; Sutphen v. Cushman, 35 Ill. 186 ; Davis v. Hopkins, 15 Ill. 519 ; Heytle v. Logan, 1 Marsh. 529.

The two thousand dollars taken by defendants in excess of the amount of the loan, was usurious : Delano v. Root, 1 Gilm. 690 ; Heytle v. Logan, 1 A. K. Marsh. 529 ; Davis v. Hopkins 15 Ill. 519 ; Tyler on Usury, 102.

The sale of the trust property without consent of the mortgagor was wrongful:    Hart v. Ten Eyck, 2 Johns. Ch. *101.

If any assent was given, it was revocable at any time before being acted upon: Kimball v. Custer, 73 Ill. 389; Tanner v. Volentine, 75 Ill. 624; Ruggles v. Lesure, 24 Pick. 187.

Upon such wrongful sale, the mortgagees must account for the full value of the property, regardless of the price obtained: Waite v. Dennison, 51 Ill. 319; Freeman v. Cook, 6 Ired. Eq. 373; Ames v. Downing, 1 Bradf. Sur. 321; Dennis v. McCagg, 31 Ill. 429; Johnson v. Lewis, 2 Strobh, Eq. 157; Moore v. Tittman, 44 Ill. 367; Norman v. Cunningham, 5 Gratt. 64; Mansell v. Mansell, 2 P. Wm. 678; Hill on Trustees *522; Perry on Trusts, § 847.

Such disposition of the property would operate to the satisfaction of the mortgage debt, to the full value of the property disposed of: Perry v. Barker, 8 Ves. 527a; Burpee v. Parker, 24 Vt. 567; Sutphen v. Cushman, 35 Ill. 186.

The mortgagees are bound to account to the sureties for the full value of the property sold: Phares v. Barbour, 49 Ill. 370; Kirkpatrick v. Howk, 80 Ill. 122; Wharton v. Duncan, 83 Pa. St. 40; N. H. Savings Bank v. Colcord, 15 N. H. 119; Everly v. Rice, 20 Pa. 297; Owen v. Homan, 3 Mc. & Gor. *378; Mayhew v. Boyd, 5 Md. 102.

The court erred in decreeing costs against complainants on the original bill: Constitution, Art. II. § 19.

The whole transaction is to be construed as one contract: Bailey v. Cromwell, 3 Scam. 71; Duncan v. Charles, 4 Scam. 561.

Messrs. McCAGG, CULVER & BUTLER, for appellees; that to constitute usury there must be a loan in fact, cited Tyler on Usury, 92; Crane v. Hendricks, 7 Wend. 569; Rapleye v. Anderson, 4 Hill, 472; Lloyd v. Scott, 4 Pet. 205; Moore v. Hoagland, 4 Denio, 264; Thurston v. Cornell, 38 N. Y. 281; Smith v. Marvin, 27 N. Y. 137.

The intent is an essential ingredient in usury: N. Y. Firemen's Ins. Co. v. Ely, 2 Cow. 678; Gale v. Grannis, 9 Ind. 140; Fursey v. Robinson, 1 Met. 663; 2 Parsons on Notes, 405; Condit v. Baldwin, 21 N. Y. 219; Lloyd v. Scott, 4 Pet. 205; Bank of U. S. v. Waggener, 9 Pet. 399; Hammet v. Yea, 1 Bos. & Pul. 144; Hogg v. Ruffner, 1 Black. 115; Brooks v. Avery, 4 N. Y. 225; Jones v. Berryhill, 25 Iowa, 295; Ketchum v. Barber, 4 Hill, 224; Clark v. Sheehan, 6 Alb. Law Jour. 126; De Forest v. Strong, 8 Conn. 513; Murray v. Harding, 2 W. Black. 859.

Indorsing a note for a premium is not usurious: Kitchel v. Schenck, 29 N. Y. 515.

Extra compensation for making a loan is not usury: Thurston v. Cornell, 38 N. Y. 283.

Revocation of consent to sell must be brought to the knowledge of the party to be affected by it: 16 Vin. Ab. 4; Story on Bailments, § 208; Salte v. Field, 5 Tenn. R. 211; Bowerbank v. Morris, Wallace, 118.

Mere forbearance of the creditor to sue, will not discharge the sureties: 2 Am. Lead. Cas. 388; P. & F. W. R. R. Co. v. Schaeffer, 9 B. F. Smith, 350; Adams Bank v. Anthony, 18 Pick. 238.

The creditor is bound to good faith, but his laches, not amounting to fraud, will not discharge the surety: U. S. v. Kirkpatrick, 9 Wheat. 720; State Bank v. Chetwood, 3 Halst. 1.

Limiting the time for redemption to three months was not error; the terms of such redemption are in the discretion of the court: Perine v. Dunn, 4 Johns. Ch. 140; Heald v. Wright, 75 Ill. 17; Crain v. Bailey, 1 Scam. 321; Mellish v. Richardson, 9 Bing. 126; White v. N. W. Stage Co. 5 Oregon, 99; Bailey v. Williams, 6 Oregon, 71; 1 Jones on Mortgages, § 342.

There being no necessity for a cross-bill, the court could dismiss it of its own motion: Harris v. Galbraith, 43 Ill. 309.

As to costs: Harper v. Ely, 70 Ill. 581.

BAILEY, P. J.   The complainants, Isaac N. Hardin, Gertrude H. Hardin and Betsey N. Holbrook, exhibited their bill in chancery against Henry F. Eames and Jesse Spaulding, the defendants, praying for an accounting in relation to a certain incumbrance which the defendants held on lands of the complainants, and in case anything should be found due, to be permitted to redeem therefrom.

The bill alleges, in substance, that, on the 23d day of February, 1877, said Isaac N. Hardin was a part owner of the equity of redemption in lots numbered from 4 to 13, inclusive, in block 1, Bowen and Smith's subdivision, etc., in Cook county, said lots having been previously sold under an incumbrance, and the redemption being about to expire ; that said Hardin, being particularly desirous of saving said equity of redemption, in view of an advantageous contract subsisting for the sale of said lots, had shortly before that time applied to said Eames for a loan of money with which to make the redemption, and that the negotiation with said Eames resulted in an arrangement between Hardin of the one part, and the defendants Eames and Spaulding of the other part, by which Eames and Spaulding agreed to advance the money necessary to redeem seven of said lots, taking the title in their own names as security for the re-payment of their advances.

That as to lots 11, 12 and 13, a redemption was effected by Spaulding, as a judgment creditor of Hardin, but solely with money borrowed by Hardin from one Winslow, and placed for the purpose in Spaulding's hands, under an arrangement that after obtaining the title, Spaulding should convey said lots to said Winslow; that under said arrangement, said lots were really held in trust for Winslow, but that after obtaining the title Spaulding refused to convey them to Winslow, and still holds said title in his own name.

That said Eames and Spaulding, under their arrangement, advanced $14,800, and therewith purchased the certificates of

sale of lots 4 to 10, inclusive, and thereafter acquired, in their own names, the title thereto; that in making said redemption, Eames and Spaulding required Hardin to put up additional real estate security for the payment within ninety days, of their advances, together with the additional sum of $2,000 demanded by them as a bonus and by way of usurious interest, and ten per cent. interest on both the advances and bonus, and also as indemnity against certain unpaid taxes on said seven lots, and, accordingly, Gertrude H. Hardin, the wife of said Isaac N. Hardin, together with her said husband, conveyed to them a tract of land in said county, containing eighty acres, of the value of $30,000, being her individual property, as such additional security, they well knowing it to be hers.

That said indebtedness was permitted to run until July 6, 1877, when a computation was had of the amount then claimed to be due, including interest on the advances and bonus, and that Hardin thereupon executed and delivered to Eames and Spaulding his two promissory notes, due ninety days after date, each for one-half of the amount so found due, with ten per cent. interest, and that in consideration of such extension, and as a further security for the payment of said money, Hardin, on the request and demand of Eames and Spaulding, induced and procured Betsey N. Holbrook to convey to them six lots in Johnson's addition, etc., of the value of $5,000, said lots being, as Eames and Spaulding then knew, the individual property of said Betsey N. Holbrook; that said notes are still held by Eames and Spaulding, and have never been fully paid, but that in February, 1878, the sum of $4,500 was realized on a judgment against one Cushman, and turned over to them to be credited thereon.

That the title to said property, except said lots 11, 12 and 13, which are held in trust for Winslow, was taken by them solely by way of mortgage, and that under the circumstances Eames and Spaulding could rightfully sell the same only under the decree of a court of equity; that, disregarding their duty in the premises, Eames and Spaulding, a few days prior to the filing of the bill, made a secret sale of said lots 4 to 10, to one Elias Trumbo for $30 a front foot, making $10,500 in all, and

threaten to make further sales of the property still held by them; that said sale was without the approbation or consent of the complainants, and at a grossly inadequate price, said lots being worth $60 to $75 a front foot, and being alone more than sufficient to fully pay Eames and Spaulding the amount of their claim, and that they are chargeable in equity with the full value of the property so sold, and ought to pay the excess to Hardin and re-convey all the other property.

That Hardin was induced to resort to Eames in the first instance on account of the friendly relations theretofore existing between them, said Eames, at the time, professing great friendship for him, and also because Eames was president of the Commercial National Bank of Chicago, where Hardin had been and was then doing business; that Eames proposed associating Spaulding with him in the matter, suggesting that Spaulding could give his paper for half the money to be advanced, which the bank would discount, and that he, Eames, would advance the remainder; that the payment of said $2,000 was not originally agreed upon between Eames and Hardin, but was suddenly sprung upon Hardin by Spaulding about the time of the consummation of the transaction, and when it was too late to make other arrangements, so that by the limited time and the stress of the situation, Hardin was forced to accede to the demand thus made.

The bill claims that, upon the accounting, Eames should be charged with the full value of the lots sold to Trumbo; and that, as the contract is usurious, they should be credited only the amount of money actually advanced by them and six per cent. interest thereon.

The defendants answered, without oath, denying that at the date mentioned, Hardin was a part owner of the equity of redemption in said ten lots, but admitting that he claimed to be the owner thereof, and that they believed him. They admit the prior sale of the lots, and that the time of redemption was then about to expire, but claim that more than one year having elapsed, all right of the owner had already expired, leaving only a right of redemption in judgment creditors. They admit that Hardin was very anxious that the title should not

pass to the purchasers at the sale, claiming that he had outstanding a contract for the sale of said lots, out of which he expected to realize a considerable sum of money.

They deny that he ever applied to Eames for a loan, or that Eames ever intended to loan him the money, or that any arrangement was made with him for advancing the money to redeem any part of said property, they taking the title as security. They admit having had a friendly interest in Hardin, and that after he had made many fruitless efforts to raise the money, they expressly refusing to make a loan, agreed to buy the certificates, and after obtaining title, to enter into a contract to sell said lots to him for $3,000 in excess of cost, with interest at ten per cent., and all taxes they should pay and ten per cent. interest thereon, such purchase to be made within ninety days from the date of the contract; that they were under no obligation to Hardin to assist him, and that by said arrangement they merely gave him an opportunity, otherwise wholly lost, to secure the title to said property.

That in pursuance of said arrangement of February 24, 1877, they bought the certificates of lots 4 to 10 for $14,823.46, and at the expiration of the time of redemption took a master's deed therefor; but that the holder of the certificates of lots 11, 12 and 13 refused to sell the same, and defendants declined to advance the money to redeem, whereupon Hardin confessed a judgment in favor of Spaulding, and furnished him with money to redeem said lots, he not knowing from whom Hardin obtained it; that Spaulding did not know that it came from Winslow, or that it was borrowed upon any agreement to convey the lots to Winslow, but they admit that the redemption of said lots 11, 12 and 13, was at the time understood to be for the benefit of Hardin, and that an agreement was made with Hardin to convey them to whomsoever Hardin should nominate.

They deny that Winslow's rights are paramount to their lien on said lots, which they claim accrued in the following manner: the transaction was much hurried by reason of the shortness of the time, and at the last moment it became apparent that Hardin was mistaken as to the amount of unpaid taxes on the property, and to secure the performance of his contract of pur-

chase, Hardin procured to be conveyed to them the eighty-acre tract, and thereupon, on February 24, 1877, they made a written contract with him for the sale of the seven lots for an amount before agreed upon, except as they had not bought the certificate for the three lots, the excess over the cost to them of the property, which had been agreed should be $3,000, was reduced to $2,000; but because, on examination of the title to the eighty-acre tract, they found judgments and tax liens on it to such an extent that they did not consider it of any value as security, it was agreed that the three lots, the title to which was in Spaulding, under the redemption proceedings, should be held as further security.

They admit that Hardin not performing his contract in ninety days, negotiations ensued which resulted in a computation of the amount due from him on the 6th day of July, 1877, and the making by him of two notes of that date, payable in ninety days, to the order of the Commercial National Bank, each for one-half of the amount due, and the giving of the six lots in Johnson's addition as further security ; but they deny that they knew at the time of the conveyances that the eighty-acre tract was the property of Gertrude H. Hardin, or that the six lots last mentioned were the property of Betsey N. Holbrook. They admit that Hardin's said notes are held by them, and claim that they have advanced $3,158.95 for liens, taxes and other charges on the property, in addition to the indebtedness represented by the notes, and have received $4,496.52 on the judgment against Cushman, which they have credited. They claim no interest in the unsold lands held by them save as security for the balance due, and deny that they ever claimed any authority to sell the property now held by them.

They admit the sale to Trumbo, but deny that it was for a grossly inadequate consideration, or that the sale was secret and without the knowledge of Hardin, but, on the contrary, allege that it was made with his knowledge, approbation and consent. They deny that the $2,000 was reserved as usurious interest, or that Hardin was forced at the last moment to pay that sum, but that they entered into the transaction themselves very unwillingly, and upon the urgent solicitation of

Hardin, and upon the assurance that it would be of the greatest service to him in enabling him to make large gains, and that the sum of $1,000 each, which they would have realized out of said transaction if Hardin had carried out his contract in good faith, was not exorbitant.

A cross-bill was filed by the defendants, reiterating substantially the averments of the answer, and praying for a foreclosure and sale as to said lots 11, 12 and 13, said eighty acre tract, and the six Holbrook lots. An answer was filed to the cross-bill, and issues were duly formed upon both answers by replications.

On the hearing, on pleadings and proofs, a decree was rendered, finding that the original transaction was merely a loan of money, and that the defendants held the title to the property described in the bill only by way of mortgage. The decree also found that the $2,000 above mentioned and the interest thereon was usury. It thereupon ordered an accounting, in which the master was directed to credit the defendants the amount of money actually advanced by them, with six per cent. interest, and to charge them with the sum collected on the Cushman judgment, and with the money actually received on the sale of the seven lots to Trumbo. On an accounting before the master on the principles thus established, it was found that there was still due from Hardin to the defendants the sum of $4,960. A decree was thereupon entered ordering the payment of said sum by the complainants with interest within three months from the entry of the decree, and that upon such payment Eames and Spaulding should convey to the complainants the said property still held by them, but that in default of such payment within the time thus limited, the complainants' bill should stand dismissed, and they foreclosed of all equity of redemption in any of said premises. The decree also dismissed the cross-bill at the costs of the complainants therein, and ordered the complainants in the original bill to pay the costs of the same.

Both parties have assigned errors, and the questions presented for our consideration are the following:

1. Whether the advance of money by the defendants to pur-

Hardin v. Eames.

chase the certificate of sale of the seven lots was in the nature of a loan, and the interest acquired by them in said lots as well as in the other property in dispute, that of mortgagees.

2. Whether the $2,000 agreed to be paid by Hardin to the defendants was a reservation of usurious interest.

3. Whether the defendants are chargeable with the value of the seven lots conveyed by them to Trumbo.

4. Whether the defendants have a lien on lots 11, 12 and 13, for the money coming to them from Hardin; or whether Hardin is not entitled to have said lots conveyed to Winslow.

Several minor questions are discussed by counsel, which it may not be necessary for us to consider.

Was the transaction a loan of money? It will not be disputed that at the time of the negotiations between Hardin and the defendants, Hardin claimed to be the owner of some equitable interest in the ten lots which had previously been sold under foreclosure proceedings. The precise nature and extent of his interest is not very clearly shown, but it appears that some time prior to the events out of which this litigation has grown, Hardin was a member of the banking firm of Cushman & Hardin, and that his firm had acquired some interest in said lots, the title being taken in the name of Hardin. Several mortgages on said lots seem to have been executed by Hardin while the title stood in his name, and afterwards the lots were conveyed to one Warren, under an agreement that he should pay the mortgages. This Warren failed to do, and the mortgages were accordingly foreclosed and the lots sold under the decrees of foreclosure. Warren, as it seems, had in the meantime been adjudicated a bankrupt, and his interest in the property was purchased on behalf of the firm.

The view is suggested that so long as the twelve months allowed to the owner to redeem had expired, Hardin's rights, whatever they may have been, had terminated, so that he was to all intents and purposes a stranger to the property. This view we think is incorrect. Although the previous owner of property may have no interest after the expiration of the twelve months capable of assertion by redemption, it does not follow that he has no beneficial interest of any kind. He is still in-

terested in having the property further appropriated to the payment of his debts through the instrumentality of a creditor's redemption, and in case of its conversion into cash by judicial sale in such manner as to realize a surplus over all incumbrances, he is entitled to such surplus.    Hart et al. v. Wingart, 83 Ill. 282.

But whatever may have been Hardin's actual interest in the property, it appears conclusively that the defendant treated with him as the owner of the equity of redemption.    In their answer, as we have seen, the defendants admit that at the time of their negotiations Hardin represented himself as being the owner of the equity of redemption, and that they believed him.    It is perhaps worthy of remark that after having the title investigated with a view of investing their money in the property, their belief in his representations does not seem to have been shaken.    They even required him, as a part of the transaction, to execute a quit-claim deed conveying to them whatever interest he had.

The evidence shows that at some time prior to the transactions in question, Hardin was also a member of the firm of Cushman, Calkins & Co., engaged in the lumber business in Michigan.    Both this firm and the banking firm of Cushman & Hardin had been dissolved, and on the 30th day of December, 1876, an agreement was entered into between Hardin and William H. Cushman, a son of Hardin's former partner, by which said Cushman agreed to purchase of Hardin all his interest of every description in the assets of both firms, the value of such interest, and also the terms of payment, to be fixed by an award of arbitrators, and within thirty days of the date of the award Hardin was to execute proper deeds and bills of sale transferring to Cushman his interest in said assets; and it was provided that in case of the failure of Cushman for sixty days thereafter to pay the purchase money or secure it in such manner as the arbitrators should determine, the whole should become due and judgment might be entered thereon by confession by any attorney in any court of record.

Very soon after the execution of this agreement, the negotiations between Hardin and the defendants commenced.    The

manifest purpose of Hardin was to retain the property so as to be able to turn it over to Cushman at the price which might be placed upon it by the arbitrators. To do this, he needed money sufficient to redeem, or what was equivalent, to purchase the certificates of sale. His purposes were inconsistent with a sale of the property out and out, although such sale should be accompanied with an agreement to re-convey at a future time. There can be no question that he applied to the defendants, in terms, for a loan. This is substantially admitted in their testimony.

When, however they undertake to state the terms of the contract actually consummated, they both swear positively that no loan of money was made or intended, but that the arrangement was that they should make an absolute purchase of the certificates of sale, and after perfecting title in themselves, enter into a contract to sell the lots to Hardin on ninety days time, at an advance of $2,000, and in this they are in a manner corroborated by the testimony of the then attorney who examined the title for them and drafted the contract of sale to Hardin. But, notwithstanding their positive assertions to this effect, we find much in their testimony, where, instead of stating categorically what the contract was, they undertake to relate what was said and done by the parties, which tends strongly to support the view that the transaction was, after all, a loan. Thus, in the testimony of Eames, we find the following:

"When he came, he wanted some assistance to take care of the property in question. It had been sold out under a mortgage, and the right of redemption was soon to expire. He wanted me to assist him in carrying the property until such time as he could hand it over to Cushman, and he wanted me to suggest some one that would aid him to do that. When the time was nearly run out, and I could find no one to aid him, I proposed if he could find some one to take half, I would take the other half, and would try to carry it along for him. He named Spaulding, and I said I would be glad to join Spaulding in the effort. We had a great many interviews, two or three times a week, for a long time. The final result was that I made a propo-

sition to raise the money, provided we found, upon examination, that the title was all right."

No one knowing the circumstances and relations of the parties as they are disclosed by the evidence, could fail to understand the foregoing as stating an arrangement for a loan of money to Hardin to enable him to save the property until he could hand it over to Cushman.

To very much the same purport is the following testimony of Spaulding: "Hardin came to my office and asked me about making an arrangement to help him carry certain property on Thirty-ninth street. I declined. Shortly after, Eames spoke to me on the subject, stating that if he could help Hardin he wanted to do it, and spoke of the arrangement between Hardin and Cushman as to the arbitration. I told Eames I had no interest in Hardin; but if he, Eames, wanted to help him, I would enter into such an arrangement as Eames suggested, provided the title, etc., was satisfactory to me."

Hardin testifies that the transaction was a loan, and that the title to the property was taken by the defendants as security for its re-payment. His testimony is, we think, much more consistent with the nature of the transaction, and its attendant circumstances than is that of the defendants. The object of the defendants clearly was, not to invest their money in lands, but to assist Hardin in retaining his interest in the property until he could dispose of it under his arrangement with Cushman. The law looks at the real substance and nature of the transaction, and when that is ascertained, the form the parties may adopt in which to clothe their dealings is ordinarily of little moment. It may be observed that the principal, if not the only advantage to the defendants, growing out of their version of the contract is, that if it was a purchase and sale, and not a mortgage, it is not within the Statute of Usury. It is a fact too notorious to be overlooked that precisely this disguise has, from time immemorial, been resorted to for the purpose of evading the provisions of that statute.

Very important evidence upon the question under consideration may be derived from the terms of the contract by which the defendants undertook to re-convey the property to Hardin.

It should be remembered that simultaneously with the execution of that contract, Hardin and wife quit-claimed to the defendants the seven lots, and Mrs. Hardin and husband conveyed to them Mrs. Hardin's eighty-acre tract. It is not pretended that this last named tract was not conveyed by way of mortgage.   The contract is in the ordinary form of a contract of sale, and recites an agreement on the part of the defendants to sell and convey to Hardin both the seven lots and the eighty-acre tract, for the sum of $16,923.10, said sum being the amount of said advances and bonus, and certain expenses, said money to be paid in ninety days with ten per cent. interest, Hardin to reimburse them also for all taxes, etc., they might be compelled to pay.   It will be observed that these two parcels of real estate are here placed on precisely the same footing and are dealt with in precisely the same manner.   If the contract is to be construed to be a mortgage as to one, which it necessarily must be, it is difficult to find a satisfactory or even plausible theory upon which the same construction does not apply to the other.   Had the parties intended otherwise, we may presume that such intention would have been manifested by apt words.

There is one other item of evidence strongly tending to contradict the testimony of Spaulding, and, incidentally, that of their then attorney.   It was claimed by Spaulding that Cushman had assumed and agreed to pay one of Hardin's notes of July 6, 1877, and for the purpose of collecting said note of Cushman, he at the time being a non-resident, Spaulding brought an attachment suit against him in the Circuit Court of Cook county.   The affidavit for an attachment was drawn up by said attorney and sworn to by Cushman, and in stating therein the nature of the indebtedness, Spaulding swore that the indebtedness was for moneys advanced by him to and at the request of Hardin for the redemption from foreclosure and sale of certain lots in Bowen & Smith's subdivision, etc., which lots were the equitable property of Cushman & Hardin, and expenses incident to such redemption; which money so advanced by him, with interest thereon, were evidenced by a certain note made by Hardin (describing one of the notes aforesaid), the

payment of which, for a valuable consideration, Cushman had assumed. This affidavit was sworn to December 6, 1877, and before any controversies between the parties to this suit had arisen. It squarely disputes the present testimony of these witnesses that the note was really given for the purchase money of the lots.

We feel fully satisfied, after duly considering all the testimony in the case, that the court below, in holding the transaction to be a loan, and the interest of the defendants in the property in question merely that of mortgagees, decided in accordance with the clear preponderance of the evidence.

Such being the case, we see no escape from the conclusion that the transaction was tainted with usury. The evidence discloses no consideration for the $2,000, exacted by the defendants sufficient to clear it of this imputation. No labor was performed or services rendered by them which are not ordinarily incidental to the loaning of money on real estate security. A careful investigation of the situation, character and credit of the borrower, as well as a thorough examination of the title of the securities offered, is a part of the business of the lender. This the defendants undoubtedly did, and as the amount was large and the title to the securities somewhat complicated, there was necessarily involved considerable labor, care and difficulty. So far as there was actual expenses by way of attorney's fees, the procuring of abstracts of title, or otherwise, such expenses were charged against Hardin, and added to the amount of the indebtedness. They did nothing for Hardin, apart from the mere loaning of the money, for which they are entitled to charge him. We see absolutely no basis for the pretense set up that $1,000 apiece was only a fair compensation for the services rendered by them to him.

The case has been litigated on the part of the defendants entirely upon the theory that the transaction was a purchase and sale of the property, and that the $2,000 was only a fair profit to them therefrom, considering the labor and trouble it has cost them. But it being made to appear that it was only a loan of money, the foundation on which the defense has rested fails, and no other is presented which is adequate to the emergency.

The statute made it unlawful for any person to exact or re-
ceive for the use of money more than ten per cent. per annum,
and the prohibition was as much against taking more than that
rate by indirect means as against taking it directly. The
$2,000 charged in this case rests on no other foundation or con-
sideration than the mere use of the money. It is an attempt
by indirect means to evade the statute, but it is none the less a
violation of law, and the consequences incident to such a con-
tract must necessarily follow.

We are unable to concur with the learned judge who ren-
dered the decree in the disposition made by him of said lots
11, 12 and 13. Whatever special lien defendants may have had
on said lots, there is no pretense that said lots were held gen-
erally as security for all of Hardin's indebtedness to them.
The decree, however, places them in the same plight with the
other property held by the defendants, and makes them, in
common with the other property, subject to the payment of the
entire indebtedness.

It is not disputed that all the money with which these lots
were redeemed was furnished by Hardin, and under the orig-
inal agreement Spaulding was to hold the mere naked title in
trust, as he claims, for Hardin or such other person as Hardin
might appoint, but, as Hardin claims, in trust for Winslow,
from whom he borrowed the money to make the redemption.
It appears that some memorandum of this agreement was
drawn up at the time, which has been lost or destroyed, and
the evidence as to the person thereby designated as usee is
conflicting. The court below seems to have reached the con-
clusion that the evidence failed to establish notice to the de-
fendants of any trust, either express or implied, in favor of
Winslow, and we are unable to say that such conclusion was
not fairly warranted by the evidence.

It seems, however, that when the parties met to close up the
arrangement for the redemption of the seven lots, there were
found to be liens, either actual or apparent, in the form of
judgments and unpaid taxes, on the eighty-acre tract, to an
amount larger than the defendants anticipated; and thereupon,
as Spaulding and the attorney both swear, Hardin, in order to

induce the defendants to proceed with the matter, agreed to allow Spaulding to hold said lots 11, 12 and 13, as indemnity to the defendants against said judgments and taxes. This is denied by Hardin, but Spaulding and the attorney agree in their testimony on this subject, except that the latter confines the arrangement to the liens on the eighty-acre tract, while the former includes also an alleged excess of taxes on the seven lots beyond the amount represented by Hardin.

There is evidence tending to show that some of these judgments were not liens at the time, and that some or all of the judgments or taxes actually chargeable upon the property have been paid and discharged. The evidence on these subjects, however, is uncertain and unsatisfactory. What was the original amount of these liens, and what amount has been discharged in such manner as to free said three lots from liability therefor, the evidence leaves it quite impossible for us to determine with any degree of certainty or precision. The court should have ascertained the amount of liens for which the three lots are still held, and permitted the complainants to redeem them by paying the amount thus ascertained.

The next question to be considered is, whether the defendants should be charged with the value of the seven lots conveyed to Trumbo, or only with the consideration actually received by them therefor.

It appearing that the defendants took their title to the property in question merely as mortgagees, it follows that they were bound to hold it subject to the rules of law governing that class of securities. It is a familiar principle that when a deed is shown to be a mortgage, it remains a mortgage until the equities of the mortgagor have been foreclosed. Smith v. Cremer et al. 71 Ill. 185. In the absence of an express power of sale, we know of no method by which the redemption of the mortgagor can be rightfully foreclosed without the mortgagor's consent, except by decree or judgment of some court of competent jurisdiction. In Hart v. Ten Eyck, 2 John Ch. 62, Chancellor Kent says: "If a freehold estate be held by way of mortgage for a debt, then it may be laid down as an invariable rule, that the creditor must first obtain a decree for a sale

under a bill of foreclosure. There never was an instance in which the creditor, holding land in pledge, was allowed to sell it at his own will and pleasure. It would open a door to the most shameful imposition and abuse."

Nor were the rights of the parties affected by the fact that by reason of a failure on the part of Hardin to place his defeasance on record, the absolute title was apparently in the defendants. True, an opportunity was thus furnished them to divest the complainants of their equity of redemption by making a conveyance to an innocent purchaser; but such a conveyance would have been a fraud upon the complainants' rights, and the defendants cannot justify a conversion of the property held by them in pledge, by pointing to a power which they could exercise only by the commission of a fraud. We are not called upon in the present case to pass upon the rights of innocent purchasers; the litigation here is between the original parties to the transaction, and the question is as to what they had a right to do, and not as to what the accidents of the situation had placed within their power.

There is, however, evidence tending to show that the conveyance to Trumbo was made with the express consent and approbation of Hardin. This Hardin denies, and some evidence was adduced which, it is claimed, tends to show that even if such consent was given, it was retracted before acted upon by the defendants. As the cause must be remanded for further proceedings, we are not disposed to pass upon this conflict in the evidence, but leave it to be determined on another hearing, unembarrassed by any opinion of ours. We think it can scarcely be doubted, however, that so long as the absolute title was apparently in the defendants, it was competent for Hardin to divest himself of his equitable rights in the property by giving his express consent to a conveyance by the defendants to an innocent purchaser. By such consent he would be estopped from charging the defendants with a wrongful conversion, and would be obliged to abide by the results of a sale thus brought about.

But there is no pretense that Mrs. Hardin and Mrs. Holbrook, the other complainants, had any notice whatever of the

sale to Trumbo, or in any manner gave their consent thereto, and the question is presented as to how far their rights are affected by such sale of a portion of the mortgaged property. It is not disputed that the property conveyed to the defendants by these complainants was their individual property, or that it was so conveyed to secure the debt of Hardin and not their own. By such conveyances they assumed to the defendants the relation of sureties for Hardin. Bank of Albion v. Burns, 46 N. Y. 170; Smith v. Townsend, 25 Id. 479; Hubbard v. Ogden, 6 Weekly Jurist, 466. True, the defendants, in their answer, deny knowledge of the fact that the lands conveyed by these ladies were their separate and individual property, but such denial cannot be sustained, as the defendants must be deemed to be notified by the very chain of title through which they claim to hold the land, as to who were the real owners. "It must be presumed that a mortgagee is cognizant of the title to the estate mortgaged, when there is no countervailing testimony." Smith v. Townsend, *supra.*

Mrs. Hardin and Mrs. Holbrook, being mere sureties, were entitled to all the rights, legal and equitable, incident to that relation. The undertaking of a surety is *strictissimi juris*, and the creditor is bound to enter into no arrangement with the principal debtor, and to do no act in relation to any primary security he may hold, whereby the situation, rights or remedies of the surety may be impaired. There can be no doubt of the right of a surety, on paying to the creditor the amount of his debt, to avail himself of every remedy which the creditor has against the principal debtor, and to have transferred to him all securities held by the creditor, and to enforce the same for his indemnity. This right stands upon the same principle of natural justice upon which one surety is entitled to contribution from another. If by act of the creditor the securities are wasted or impaired, the loss must fall upon him.

In Phares v. Barbour, 49 Ill. 370, the court say; "It is a well settled rule in equity jurisprudence that where a creditor procures further security by the pledge of property, he thereby becomes a trustee as to that property, for the sureties for the payment of the debt. By his taking a mortgage or other

Hardin v. Eames.

pledge, it enures to the benefit of the sureties as well as to the creditor. In such a case they have a right to discharge the debt and compel the creditor to transfer the mortgage or pledge to them for indemnity. Where additional security is taken, it is regarded as an indemnity to both the creditor and the sureties; and any waste or misapplication of the pledge operates as a release to the sureties to the extent of the waste or misapplication. Where the creditor receives such a pledge, he becomes a trustee for the sureties, and is bound to observe the duties that relation imposes as to the trust property." See, also, Kirkpatrick v. Howk, 80 Ill. 122; Rogers v. Trustees of Schools, 46 Ill. 428; Baker v. Briggs, 8 Pick. 121; Neff's Appeal, 9 Watts & Serg. 36.

Had the mortgage in this case provided any particular mode for the conversion of the securities into money for the payment of the debt, it may be that by pursuing that mode in good faith the defendants might have been exonerated ·from any charge of a breach of trust. No such mode, however, was provided for, and the only way in which they could subject the mortgaged property to sale without being chargeable for misappropriation was by judicial foreclosure. It cannot be said that because the defendants may have supposed they were acting within the powers vested in them by the mortgage, or that they were making the best practicable disposition of the property, they ought to be charged only with the price actually received. They were mistaken in the powers vested in them as mortgagees and trustees, and must abide the consequences of their mistake. The rule is well settled that where a trustee misapplies or disposes of trust property contrary to, or in a manner variant from, the terms of his trust, and the property is thereby disposed of in such manner that it cannot be followed and recovered in specie, he is chargeable, not merely with the consideration received, but with its full value. Hill on Trustees, 522; Perry on Trusts, Sec. 847.

The lots sold realized $30 per foot, and that sum only was credited on the indebtedness for which the property of these sureties is held by the defendants. In determining the conditions on which Mrs. Hardin and Mrs. Holbrook should be al-

lowed to redeem their lands, the court should have ascertained the actual value of the lots sold at the time of the sale, and applied such value upon the amount due from Hardin, and on payment of the balance thus ascertained, their lands should have been discharged from the incumbrance. There was evidence offered tending to show that the value of the lots was very largely in excess of the amount for which they were sold, so that if said value had been applied to said indebtedness, but little if anything would have remained. The court will refer the cause again to the master to state the account, with directions to take testimony and ascertain the value of said lots, and in stating the account so far as Mrs. Hardin and Mrs. Holbrook are concerned, to deduct the entire value thus ascertained from the amount due from Hardin. And if the court, upon consideration of the evidence should find that the sale of said seven lots was made without the consent of Hardin, or after a consent previously given had been retracted, then in stating the account so far as concerns said Hardin, also, said value should be deducted.

The decree will be reversed and the cause remanded for further proceedings in accordance with this opinion.

Decree reversed.