Syllabus.

67　413
69　608
71　679
67　413
73　515

## ANNIE E. CHILES v. C. W. GALLAGHER ET AL.

1. MORTGAGE. *Money paid for son. Advancement.*

   Where a father is accustomed to make loans to his children, keeping memoranda of the same as advancements, and his son buys land from a third person, borrowing the purchase-money from the father, who pays the same to such person, taking the title in his own name as security, the son becomes, in equity, the owner of the land and the father mortgagee as to the amount so paid.

2. SAME. *Advancement. Release of mortgage debt. Distribution.*

   In such case where the will of the father has directed that in distribution of his estate an account shall be taken of the amounts advanced to, and the debts due from his children, the amount so paid for the land at the instance of the son is to be treated as an advancement to him, and, as against the other heirs and devisees of the father, this is sufficient to release the debt for the money so paid.

3. TAX-TITLE. *Party in possession. Disability to buy.*

   One in possession of land receiving the rents is under obligation to keep the taxes down. If default in payment is made by such occupant that the land may be sold, a purchaser at the tax-sale, who confederates with the occupant, and who knows of the possession, will hold the title as trustee *ex maleficio* for the real owner; and this, although the right of such owner rests upon an equity unknown to the purchaser.

4. CHANCERY COURT. *Removing clouds. Complainant must be real owner.*

   To enable a complainant in equity to cancel a title as a cloud, it is not sufficient to show want of right in the defendant. Complainant himself must show as perfect title, legal or equitable, as would enable him; the title being a legal one, to recover against the defendant in ejectment.

5. SAME. *Rule where some of the defendants cannot deny complainant's title.*

   In a suit to remove clouds, where certain of the defendants occupy such trust relation as that they cannot question complainant's right, it is not necessary to show title as against them; but where there are other defendants, purchasers from these without notice of complainant's interest in the land, who challenge the right to relief, it is necessary to show a good title in order to recover against them.

6. SAME. *Defendants' tax-title. Validity of, when immaterial. Complainant's right to relief.*

   In such suit where the defendants set up a tax-title which they have acquired, and some of them occupy such trust relation that they cannot

assert it, and, independently of this title, complainant fails to show a right to relief as against the other defendants, it may be conceded that the tax-title is invalid, and still the complainant is not entitled to a decree as against these defendants.

7. SAME. *Complainant must show title. Possession. Relief when denied.*

Where the defendants deny complainant's title, and complainant, claiming through her father, avers that he purchased the land from another and entered into possession under his deed and so remained until his death, it not being shown that such other had title or even possession, and it further appearing that the father was never in possession of the land as alleged, the complainant cannot recover.

FROM the chancery court of Lauderdale county.

HON. SYLVANUS EVANS, Chancellor.

On the 16th of October, 1886, the appellant, Annie E. Chiles, filed the original bill in this case, alleging that she was the owner of twenty acres of land in the city of Meridian, and seeking to remove clouds from her title thereto. The appellees, Gallagher, Cameron, Watkins, and Champenois, were made defendants. They demurred to the bill, and after their demurrer was overruled they answered. Afterwards, as required by the court, the bill was amended by making the widow and heirs-at-law of F. B. Higgins, deceased, parties defendant. These parties answered and made their answer a cross-bill against complainant, Annie E. Chiles, and the original defendants. The complainants in the cross-bill alleged that they, with the said Annie E. Chiles, owned the land as tenants in common, and they sought to cancel the claim of the other defendants as a cloud on their title and asked for partition. All the defendants to the cross-bill answered. Testimony was taken at great length, and the cause was heard on the pleadings and proofs. A decree was entered dismissing the original bill absolutely and the cross-bill without prejudice. From this decree the complainant, Annie E. Chiles, appealed. Complainant became of age August 18, 1881. The other facts are stated in the opinion of the court.

*Walker & Hall,* for appellant.

As to the questions decided, counsel made the following points:—

1. The fundamental proposition upon which complainant's right

to relief rests is, that she is the true owner of the land. *Watson* v. *Austin*, 63 Miss. 469. Under the facts of this case, the test of ownership in the purchase of the land from Gibbs is, whose money paid the price. It is clear that J. C. Higgins borrowed the money to pay for the land. The money then was his own. *Leeikauf* v. *Barnes*, 66 Miss. 207. A review of the evidence shows that F. B. Higgins did not furnish the money as a purchaser of the land. He loaned money to all his children, keeping an account, and directed in his will that the same should be treated as advancements. Had the title to this land been taken in the name of J. C. Higgins, the heirs of the father could not establish a resulting trust, because the money was advanced as a loan. Lawson L. Cases in Eq., 15; Perry on Trusts, § 133; 13 S. & M. 53; 40 Miss. 788; 41 Ib. 479. Under all the authorities, the transaction created the relation of mortgagor and mortgagee. J. C. Higgins bought the land and became owner. His father loaned him the money to pay the purchase price, and took the title in his own name merely as security, thereby becoming mortgagee. *Runnels* v. *Jackson*, 1 How (Miss.), 358; 23 Miss. 200; 26 Ib. 184; 32 Ib. 179; 50 Ib. 403; 54 Ib. 99; 12 How. (U. S.) 139.

2. J. C. Higgins was then put in possession, and the mortgagee had only a chattel interest. *Carpenter* v. *Bowen*, 24 Miss. 28. J. C. Higgins being the true owner, and in possession, after the debt was barred by limitation, the lien was lost. This being true, the naked legal title should be divested out of the heirs of F. B. Higgins in favor of complainant, the sole heir of J. C. Higgins.

3. It was not incumbent on complainant to show title in Gibbs, her father's vendor, for three reasons: *First.* If Gibbs was not owner, his deed gave color of title, and possession thereunder since 1859 would confer title by limitation. *Second.* Complainant's father having died in possession, title by descent was cast on her. 31 Miss. 547. Such title is *prima facie* good. 32 Miss. 125. And possession of the ancestor is *prima facie* evidence of seizin in fee. 60 Miss. 1048. *Third.* Her title at most is only conditionally denied. She is only required to meet the issues made by the pleading. Code 1880, § 1892.

4. (Counsel discussed at length the questions involved in the objections made to defendant's tax-title, and cited authorities to show the invalidity of the same; but in view of the decision of the court, it is not deemed necessary to give the argument as to this on either side.)

5. Mrs. Higgins, the mother of complainant, then a minor, was in possession of the land, receiving the rents, and it was her duty to keep the taxes paid. Instead of doing this, she confederated with Gallagher, and the land was forfeited for taxes, and bought in by him. Manifestly a tax-title thus acquired cannot prevail.

*R. P. Williams,* for appellees, the widow and heirs of F. B. Higgins.

1. The allegations of the bill to the effect that J. C. Higgins purchased the land, and went into possession, and occupied the same; that the naked legal title merely was vested in F. B. Higgins, and that he never had any other connection with the land, are all positively denied by the defendants we represent, and we could well rest this branch of the case on the pleadings.

2. But the evidence shows that J. C. Higgins, and, after his death, his widow, always held the land as tenant, and never claimed it adversely to F. B. Higgins.

3. For the reason just stated, no statute of limitations ran against F. B. Higgins, or his heirs, in favor of J. C. Higgins or complainant.

4. The widow of J. C. Higgins was in possession of the land by permission of the owners, the heirs of F. B. Higgins, and being in possession collecting the rents she confederated with Gallagher, her attorney, to allow the land to be sold for taxes, and he bought it in. It was the duty of Mrs. Higgins to pay the taxes, and this sale was a fraud on the owners of the land. The three years' possession under a tax-title thus acquired does not cure the defect and vest title. *Pool* v. *Ellis,* 64 Miss. 564; 63 Ib. 50; 26 Wis. 614; Black on Tax-Titles, § 284.

Besides, the assessment is void, and there is no sufficient

description of the property.  Cooley on Taxation, p. 563; Black
on Tax-Titles, § 283.  And again, the three years' statute was
passed after this sale occurred.  60 Miss. 1038; 62 Ib. 433;
Cooley on Taxation, 569, note.

*J. S. Hamm*, and *Witherspoon & Witherspoon*, for the other ap-
pellees.

Counsel filed an elaborate brief, making the following points:—

1. The averment of the bill that the land was in truth purchased
by J. C. Higgins is denied by the answers.  To contradict the
deed and overturn the answers, strict proof is required.  Especially
is this true after a long lapse of time, and the death of the parties
to the transaction.  Perry on Trusts, § 137; 2 Story's Eq. Jur.,
§ 1201; 1 Johns. Ch. 582; 2 Ib. 405.

The evidence here is wholly insufficient to show a resulting trust
in favor of J. C. Higgins.

And the bill is fatally defective in failing to show that Gibbs,
from whom the land was purchased, had any title.  61 Miss. 153.

2. The complainant has not shown title by adverse possession.
The allegations of the bill as to this, instead of being established,
are clearly disproved by the testimony.  It is shown that the
mother of complainant occupied the land until Gallagher bought,
in 1876.  There is some evidence that J. C. Higgins, in his lifetime,
claimed the land, but he was never in possession.

Visible and notorious occupation, with claim of ownership, is
necessary to constitute adverse possession, and it must be continued
for the period prescribed by the statute.  31 Miss. 490; 36 Ib.
404; 38 Ib. 401; 30 Ib. 409.

Suing for trespass, paying taxes and speaking publicly of the
claim, do not constitute adverse possession.  44 Miss. 668; 37
Ib. 138.

An infant claiming title by adverse possession, like an adult,
must show continued possession for ten years.  Complainant
having shown no title cannot have relief.  The court will not set
aside a legal title in a doubtful case.  Complainant must show the
validity of his own title and the invalidity of the defendant's

claim.   10 S. & M., 62 ; 13 Ib. 344 ; 47 Miss., 144 ; 44 Ib. 662 ; 49 Ib. 569 ; 51 Ib. 166 ; 52 Ib. 822 ; 61 Ib. 1 ; *Hart* v. *Bloomfield,* 66 Ib. 100 ; *Soria* v. *Stowe,* Ib. 615.

The jurisdiction to remove clouds is limited.   It is confined to the particular relief, and the special cases contemplated by the statute.   51 Miss. 789 ; 57 Ib. 239.   It does not supersede the action of ejectment.   47 Ib. 395 ; 51 Ib. 412–789.

It was proper to dismiss the bill, and the cross-bill went with it. *Belcher* v. *Wilkerson,* 54 Miss. 677, and authorities cited.

3. Gallagher was not in possession of the land, and there was no obligation resting on him to pay the taxes.   Therefore he was under no disability to buy at tax-sale.   This case differs from *McGee* v. *Holmes,* 63 Miss. 52.   There Tyson, who purchased the land from the state, was in possession when it was sold to the state for taxes.

It is not alleged in the bill, nor shown by the proof that Gallagher was the attorney of complainant.   If he was the attorney of her mother, Mrs. M. E. Higgins, she alone could complain as to this, and she is not a party to the suit.

4. (Here counsel discussed the validity of the tax-title, but it is not considered necessary to give this part of the argument.)

5. Gallagher purchased January 3, 1876, and shortly afterwards went into possession and improved the land, and he and his vendees have been in possession ever since.   Even if the tax-title is invalid, complainant cannot recover against them.   Code 1871, § 1709 ; Code 1880, § 539 ; *Nevin* v. *Bailey,* 62 Miss. 433 ; 64 Ib. 514 ; 63 Ib. 50 ; *Leffingwell* v. *Warren,* 2 Black (U. S.), 599 ; *Pillow* v. *Roberts,* 13 How. (U. S.), 472 ; *Sigman* v. *Lundy,* 66 Miss. 522.

6. Gallagher's connection with the land as the attorney of Mrs. M. E. Higgins is not alleged in the bill as a ground for invalidating the tax-title.   This fact crops out incidentally in the evidence merely, and complainant can take no advantage of it.   But we do not concede that Gallagher was guilty of any wrong as against Mrs. Higgins.   He carried out in good faith the arrangement made with her.   If she were complaining, she would not be entitled to relief against him.   *Midzza* v. *Yerger,* 53 Miss. 135.

7. If it be conceded, that complainant has established her

title, and has shown that a trust resulted in favor of her father in the purchase of the land twenty-five years after the transaction, the court will not grant relief on this secret equity as against these appellees, who had no notice of it prior to the filing of the bill.

COOPER, J., delivered the opinion of the court.

The complainant, alleging that she is sole heir-at-law of John C. Higgins, exhibited her bill against the heirs-at-law of her grandfather, F. B. Higgins, and against the defendant Gallagher, who, it is charged, under the circumstances hereinafter named, secured by fraud a tax title to the lands described in the bill, and against Cameron, who has bought an undivided one-half interest in the land from Gallagher, and against Champenois and others, who are mortgagees under Gallagher and Cameron. The purposes of her bill are to establish the title of herself as heir-at-law of her father, as against the heirs-at-law of her grandfather, and to cancel as clouds upon her title the tax deed to Gallagher, the conveyance by him to Cameron, and the mortgages executed by Cameron and Gallagher.

Shortly stated, the facts upon which complainant relies are as follows: In the year 1859 her father purchased the land from one Gibbs, but being unable to pay the purchase-money, applied to his father, F. B. Higgins, to advance the amount. His father complied with this request, but required the conveyance to be made to himself, which was done. F. B. Higgins was accustomed to keep memoranda showing advancements made to his children respectively, and money lent to them, and, among other sums noted by him as due from John C. Higgins, was the money paid for the land in controversy. By his will, F. B. Higgins directed that in distribution of his estate each child should be charged with all advancements received, and with all debts due to him. He died in 1863, his son, John C. Higgins, having died in the year 1861.

In 1867 or 1868 the mother of complainant (widow of John C. Higgins) erected several small houses on the land in controversy, which she rented to various persons, collecting the rents and appropriating them to her own use, and paying the taxes upon the

property. Several letters written by her to the widow of F. B. Higgins show that she recognized the land to be the property of his estate, and asked permission of his heirs-at-law to occupy the same. In the year 1875 she seems to have conceived the purpose of selling the land for the purpose of applying its proceeds to the education of her daughter, the complainant, who was then an infant of the age of fourteen years. She proposed to Gallagher to sell the land to him, and he agreed to buy it, and upon the faith of this agreement he assumed pecuniary obligations for the education of complainant, which he afterwards discharged. Examination of the records by him disclosed the fact of the title being in F. B. Higgins, and he declined to consummate the purchase, unless Mrs. Higgins would procure conveyances from the heirs-at-law. These she attempted to secure, but unsuccessfully. Gallagher then proposed that the land should be permitted to be sold for taxes, and that he should become the purchaser. This arrangement was carried into effect, and Gallagher paid out for tuition of complainant about the value of the land, as agreed on between himself and Mrs. Higgins. Soon after the sale for taxes (January, 1876) Gallagher entered into possession of the land, and so continued, claiming it as his own, until January, 1886, when he conveyed the undivided one-half interest to Cameron, since which time Gallagher and Cameron have been in possession. In January, 1886, and before the conveyance to Cameron, Gallagher and Cameron, who were partners in business, borrowed $3000 from Champenois, and to secure the same executed a mortgage upon the lands in controversy and other lands in which Cameron had an interest. All the lands were included in a single mortgage, Gallagher executing it to convey the lands in controversy, and Cameron to convey the other lands.

The facts above set forth are extracted from a voluminous record, which contains much other matter not necessary to be stated. These facts are not undisputed, but careful scrutiny of the evidence convinces us of their truth, and that they are not controlled or materially modified by other facts and circumstances.

With the facts thus found, it is not difficult to apply clear and

well-settled principles to the solution of the questions involved.
The controversy separates itself into three inquiries :—

1. What are complainant's rights as against the heirs-at-law of
F. B. Higgins ?

2. What are they as against Gallagher, the purchaser at the tax
sale ?

3. What are they as against the purchaser and mortgagee under
Gallagher ?

1. The arrangement between John C. Higgins and his father, by
which the father advanced the price of the land and took title to
himself, is not an unusual one, especially between parent and child,
and its effect was to make the father mortgagee of the land.   The
son was the purchaser of the land, but not the grantee of the legal
title.   He was the meritorious or moving cause of the conveyance,
but being unable to pay the purchase price, secured it to be ad-
vanced by his father, at whose instance the conveyance was made
to the father.

The father charged the amount so paid in an account he kept
against his son, making no discrimination between this particular
sum and others, which he had previously loaned to him, and by his
will directed an account to be taken of the whole sums due in dis-
tribution of his estate.   Under such circumstances, the right of the
son as owner of the land, subject to the charge for the purchase
price, is clear.   *Runnells* v. *Jackson*, 1 How. 358 ; *Evans* v. *Green*,
23 Miss. 294 ; *Robinson* v. *Leflore*, 59 Ib. 148 ; *Carr* v. *Carr*, 52
N. Y. 251 ; *Smith* v. *Cremer*, 71 Ill. 185.

By his will F. B. Higgins directed the debt to be treated as an
advancement, and this was sufficient as against the other heirs-at-law
and devisees to release the debt due for the price of the land.   It
appears that the estate of F. B. Higgins is insolvent, but since
no administration has been taken of his estate in this state, we are
not called upon to consider what would be the right of the admin-
istrator of the estate proceeding to charge the land with the pay-
ment of the debt.

2. It is not necessary for the determination of the cause to pass
upon the validity of the proceedings under which the sale for taxes

was made. Whether they were valid or invalid, the defendant Gallagher cannot avail of the title thereby derived to defeat the right of complainant ; and, whether they are valid or invalid, the complainant has not, as against Cameron and Champenois, shown any right to call them in question.

The widow of John C. Higgins was in possession of the land, receiving the rents and profits thereof, and therefore under obligation to keep down the taxes. This Gallagher knew, and though it does not appear that he knew the facts relative to the original purchase by John C. Higgins, and that F. B. Higgins held the legal title as security for the purchase-money paid by him, by reason of which the complainant as heir-at-law of her father was owner of the land, it is unquestionably true that default was made in payment of the taxes on the land to the end that by its sale for taxes he might secure the title which Mrs. Higgins had agreed to invest in him. Default in payment by the occupant and a tax sale as the consequence of such default was essential to the consummation of the scheme. If Mrs. Higgins had bought at this tax sale, she would have held the title as trustee *ex maleficio* for complainant, and Gallagher confederating with her stands in no better position than she would have sustained had she herself bought. *Joor* v. *Williams*, 38 Miss. 546 ; *Brockett* v. *Richardson*, 61 Ib. 766.

3. It becomes now necessary to consider another question, made pertinent by the connection of Cameron and Champenois with the property. Whether complainant is or is not the real owner of the land was wholly immaterial, so long as we were considering the right of the heirs-at-law of F. B. Higgins and of Gallagher to defend against her claims. F. B. Higgins received the title conveyed to him by Gibbs as trustee for John C. Higgins, complainant's father. Whether it was a valid title was a matter of no concern to him, nor since his death to his heirs-at-law. It is not competent for them to controvert the validity of the title he received. Upon the same principle, Gallagher, the purchaser at the tax sale, cannot call upon complainant to show herself to be the real owner of the land. He is infected with the same disability as was the widow with whom he combined to defeat by tax

sale the title of the owner, and, since she might not have denied the title of complainant, he may not do so.

But these disabilities spring from the relations of trust and confidence in which these parties, in the eye of a court of equity, stand towards complainant. Neither Cameron nor Champenois is shown to have had any knowledge of the existence of complainant's right; nor have they done anything for the purpose of aiding the trustees, or either of them, in a breach of trust. They are purchasers for value without notice of complainant's interest in the property. If they must yield to her title, it is because it is superior in law to that asserted by them. Counsel for complainant, appreciating this, strive to show the sale for taxes to Gallagher to be void for want of a valid assessment and sale of the land, wherefore no title passed to him, and consequently that none was conveyed by him to these parties. It may be conceded, for the purpose of this case, that the tax sale was invalid. It does not follow that these defendants must yield to the claim of complainant. Admitting they have no title, they may yet challenge her right to call them to account, unless she is the owner of the land.

There is no more serious or prevalent error than that which seems to exist in relation to the right of parties to exhibit bills to cancel clouds upon titles. It is frequently assumed that if a complainant can show some antecedent claim, however vague and unsubstantial, he may assail and dispel anything which is a cloud upon the real title. We cannot conceive what has given rise to this erroneous view, for it is settled by an unbroken current of decisions, that to enable a complainant to cancel the defendant's title as a cloud, he himself must show as perfect a title, legal or equitable, as would enable him, the title being a legal one, to recover against the defendant in an action of ejectment.

Tested by this rule, the complainant has failed to establish such title as entitles her to relief against these defendants.

As against the heirs of F. B. Higgins and Gallagher, she prevails, not because she shows title, but because they do not occupy a position to deny her title. As to the other defendants, against

whom she must show a sufficient title, and recover on it, her showing is wholly insufficient.

By her bill she avers that her father bought the land from Gibbs, and entered into possession and so continued until his death. There is no allegation that Gibbs had title, nor even that he was in possession of the land he sold and conveyed. Assuming, as we must do, that she has stated her case as strongly as the facts would warrant, we find nothing but color of title claimed as derived from Gibbs. The averment that her father entered into possession under this deed and died in possession would have been sufficient, if proved, to show a *prima facie* right of recovery. Unfortunately for her, this allegation is denied by the answer, and is not only not proved, but is disproved by the evidence. It is clearly shown that her father never entered upon the land, and therefore that he was never in possession, unless being the true owner (which is not shown) his title drew to him its constructive possession. The only possession in fact that is ever shown to have existed was long after the death of her father, when her mother took possession, either as widow of John C. Higgins, or in recognition of the adverse title asserted by the heirs of F. B. Higgins, deceased. Viewing the evidence most favorably for complainant, it is more than probable she held in the latter right.

Under such circumstances, it has never been held that the title of a defendant, entering under conveyance from one in possession, who himself claimed under color of title, could be called in question.

*The decree is affirmed in so far as it dismisses the bill as against the defendants other than Gallagher and the heirs of F. B. Higgins; as to them, it is reversed, and cause remanded.*